STATE OF NORTH CAROLINA v. ROBBIE ZEB STOKES

No. COA11-373

(Filed 1 November 2011)

## 1. Sexual Offenses—child abuse with sexual act—digital penetration

The trial court did not err by denying defendant's motion to dismiss a charge of felonious child abuse with a sexual act where defendant contended that digital penetration did not constitute an "object" within the meaning of N.C.G.S. § 14-27.1(4). Defendant's digital penetration of the victim would constitute a sexual act.

## 2. Aiding and Abetting—sex offense—duress—criminality

The trial court did not err by denying defendant's motion to dismiss a charge of aiding and abetting a sex offense where defendant argued that there was no crime to aid and abet because he forced his teenage son to commit the acts against his daughter. Duress would have provided the son with a legally valid reason for committing the acts, but would not have transformed those acts into non-criminal activity.

## 3. Evidence—contradictory testimony—not prejudicial—other testimony

In light of other testimony, there was no prejudice in a prosecution for multiple offenses involving the sexual abuse of a child from the testimony which defendant argued contradicted the victim.

## 4. Evidence—no plain error—other evidence

In light of other evidence, there was no plain error in a prosecution arising from child sexual abuse in the admission of the testimony of several witnesses.

STATE v. STOKES

[216 N.C. App. 529 (2011)]

**5. Criminal Law—acting in concert—instructions—duress—law accurately stated**

> The trial court did not err in its instructions on acting in concert in a child sexual abuse case where defendant argued that there was no common action because the second person was a 12 year old boy who acted under defendant's direct orders and threats.

**6. Satellite-Based Monitoring—findings—highest-level of supervision not needed—long term of imprisonment**

> Orders requiring lifetime satellite-based monitoring (SBM) were reversed and remanded where the trial court found that defendant did not require the highest possible level of supervision and monitoring but ordered that defendant enroll in SBM for life. The trial court may have determined that defendant would not require the highest level of supervision and monitoring because of the length of his sentence, but wanted SBM if defendant was released from prison. However, the highest level of supervision is SBM and the determination is based on the relevant statutory language rather than defendant's likely term of imprisonment.

Appeal by defendant from judgments entered 16 August 2010 by Judge F. Lane Williamson in Superior Court, Cleveland County. Heard in the Court of Appeals 29 September 2009.

*Attorney General Roy A. Cooper, III, by Sonya M. Calloway-Durham, for plaintiff-appellee.*

*Haral E. Carlin, for defendant-appellant.*

STROUD, Judge.

Defendant appeals the trial court judgments convicting him of aiding and abetting first degree sex offense, two counts of felony child abuse—sexual act, and first degree sex offense with a child; defendant also appeals the trial court orders enrolling him in satellite-based monitoring. For the following reasons, we find no error in defendant's trial or judgments but reverse and remand the order for satellite-based monitoring for a new hearing.

STATE v. STOKES

[216 N.C. App. 529 (2011)]

## I. Background

The State's evidence tended to show that Becca, a minor child, was residing with her brother, Todd[1] and defendant, their father. Defendant "hurt[]" Becca, in the "[f]ront part" of her "private area" by sticking "[h]is thing[,]" "[a] wiener[,]" in her which caused her to bleed; defendant did this "several" times. Todd also "stuck" a toy car in Becca's "front part." Todd witnessed defendant put his fingers in Becca's vagina on more than one occasion. Defendant also forced Becca to "play" with Todd's penis "by putting it in her mouth" on multiple occasions. Dr. Christopher Cerjan, a pediatrician at Shelby Children's Clinic, examined Becca and noted that Becca's vaginal exam was abnormal in a manner which would only be caused by repeated "direct trauma going into the vaginal opening."

On 22 January 2007, defendant was indicted for two counts of felony child abuse—sexual act, first degree statutory sexual offense, and first degree sex offense with a child. Defendant was found guilty by a jury of all of the charges, specifically felonious child abuse by a sexual act ("child abuse"), first degree sexual offense with a child under the age of thirteen ("sex offense with a child"), aiding and abetting first degree sexual offense with a child under the age of thirteen ("aiding and abetting a sex offense"), felonious child abuse by allowing the commission of a sexual act ("child abuse by allowing a sex act"). The trial court entered judgments wherein defendant was sentenced to imprisonment; the trial court also ordered that defendant be placed on satellite-based monitoring "for his . . . natural life[.]" Defendant appeals.

## II. Motion to Dismiss

Defendant contends that the trial court erred in denying his motion to dismiss the charges of child abuse, aiding and abetting a sex offense, and child abuse by allowing a sexual act.

> The standard of review concerning a motion to dismiss is *de novo*. In reviewing a motion to dismiss criminal charges, we view all evidence in the light most favorable to the State and give the State every reasonable inference which can be drawn therefrom. To overcome a motion to dismiss, the State must have presented substantial evidence of each element of the offense charged and of the defendant's guilt. Substantial evidence is relevant evidence

---

1. Pseudonyms will be used to protect the identity of the minor children involved in this case.

that a reasonable mind might accept as adequate to support a conclusion. Any contradictions or discrepancies in the evidence are for the jury to resolve, and these inconsistencies, by themselves, do not serve as grounds for dismissal.

*State v. Cole,* 199 N.C. App. 151, 156, 681 S.E.2d 423, 427, *disc. review denied,* 363 N.C. 658, 686 S.E.2d 678, *disc. review denied,* 363 N.C. 658, 686 S.E.2d 679 (2009) (citations and quotation marks omitted.)

A.  Child Abuse

**[1]** N.C. Gen. Stat. § 14-318.4(a2) provides that "[(1) a]ny parent or legal guardian [(2)] of a child less than 16 years of age [(3)] who commits or allows the commission of any sexual act upon" a child is guilty of felonious child abuse. *See* N.C. Gen. Stat. § 14-318.4(a2) (2005). " 'Sexual act' means cunnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body[.]" N.C. Gen. Stat. § 14-27.1(4) (2005).

Defendant does not contest that he is Becca's "parent" or that she was "less than 16 years of age" at the time of the offense; *see* N.C. Gen. Stat. § 14-318.4(a2), instead, "defendant contends the State failed to present sufficient evidence [defendant] was in fact the person that inserted an object into the vagina of" Becca. Defendant argues that Becca testified "that [defendant] only had vaginal intercourse with her . . . [s]he specifically testified that he committed no other sexual acts against her." However, Todd testified that he witnessed his father "[m]oving . . . in and out" of Becca's "vagina" with "[h]is finger." Defendant's digital penetration of Becca's vagina would constitute a sexual act. *See State v. Lucas,* 302 N.C. 342, 345-46, 275 S.E.2d 433, 435-36 (1981) ("The evidence in this case tends to show that defendant penetrated the genital opening of [the victim's] body with his fingers. Defendant contends this is not a "sexual act" under the statute because the Legislature only intended the words "any object" in G.S. 14-27.1(4) to mean any object foreign to the human body. . . . [W]e are of the opinion, and so hold, that the Legislature did not intend to limit the meaning of the words "any object" to objects foreign to the human body.") Any inconsistencies between Becca's testimony and Todd's testimony would be for "the jury to resolve[.]" *Cole,* 199 N.C. App. at 156, 681 S.E.2d at 427. Accordingly, this argument is without merit.

B.  Aiding and Abetting a Sex Offense and Child Abuse by Allowing a Sex Act

**[2]** Defendant's conviction for aiding and abetting a sex offense was based upon the allegation that defendant "unlawfully, willfully and feloniously did allow, aid, abet, encourage, and knowingly fail to protect his 10 year old child, [Becca] . . ., from a sexual act, the penetration of her vagina and anus by an object and by the fingers of his juvenile teenage son" Todd. Defendant's conviction for child abuse by allowing a sex act was based upon the allegation that defendant "unlawfully, willfully and feloniously did allow a sexual act to be committed against his 10-year-old daughter by his juvenile son by inserting and allowing to be inserted an object and fingers into the vagina and anus of" Becca.

N.C. Gen. Stat. § 14-27.4(a)(1) provides that

> [a] person is guilty of a sexual offense in the first degree if the person engages in a sexual act . . . [w]ith a victim who is a child under the age of 13 years and the defendant is at least 12 years old and is at least four years older than the victim[.]

N.C. Gen. Stat. § 14-27.4(a)(1) (2005). Again, the elements for child abuse by allowing a sex act are "[a]ny parent or legal guardian of a child less than 16 years of age who commits or allows the commission of any sexual act upon" the child. *See* N.C. Gen. Stat. § 14-318.4(a2). In *State v. Holcombe*, this Court stated:

> Although it is not defined by our statutes, our Supreme Court has upheld three elements of the crime of aiding and abetting: (1) that the principal crime was committed by another; (2) that the defendant knowingly advised, instigated, encouraged, procured, or aided the other person; and (3) that the defendant's actions or statements caused or contributed to the commission of the principal crime by the other person.

___ N.C. App. ___, ___, 691 S.E.2d 740, 746 (2010) (citation, quotation marks, and brackets omitted).

Defendant contends that

> [u]nder the theory of aiding and abetting the State must prove that some person other than the defendant committed the crime[s] of . . . [aiding and abetting a sex offense and child abuse by allowing a sex act]. The question to be asked is can [defendant] aid and abet [and allow Todd], a 12-year old, in

committing the crime[s charged] . . . when [Todd] is acting under duress through the threats from [defendant].

The defendant argues that because [Todd] was acting under duress and did not engage in the act willfully, he did not commit a crime and therefore, there was no basis for conviction of the defendant[.]

Here, defendant does not contest that Todd committed the elements of the crimes charged or that he committed the elements of aiding and abetting and allowed such crimes; defendant only contends that because he forced Todd to commit the acts against Becca, Todd was acting under duress and thus could not be guilty of a crime.

We find defendant's argument to be both offensive and absurd. However, even assuming *arguendo,* that defendant's argument is reasonable and that Todd was under duress while performing certain acts upon his sister, such acts would still constitute a crime. Duress is an affirmative defense. *See State v. Cheek,* 351 N.C. 48, 61, 520 S.E.2d 545, 553 (1999), *cert. denied,* 530 U.S. 1245, 147 L. Ed. 2d 965 (2000). An affirmative defense is "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." Black's Law Dictionary 482 (9th ed. 2009). Thus, in essence, duress would provide Todd with a legally valid reason for committing the acts he did; duress does not however transform those acts into non-criminal activity as defendant argues. Whether Todd was acting of his own free will or under duress, or any level of volition between, his acts still constitute a crime, and thus this argument is without merit.

### III.  Testimony

Defendant next argues that the trial court erred in allowing the testimony of various witnesses.

### A.  Mr. Billy Payne

[3] Defendant objected during his trial, but "[e]ven if the complaining party can show that the trial court erred in its ruling, relief will not ordinarily be granted absent a showing of prejudice." *State v. Edmonds,* ___ N.C. App. ___, ___, 713 S.E.2d 111, 117 (2011) (citation and quotation marks omitted).

Defendant's first argument is regarding the testimony of Becca's adoptive father, Mr. Billy Payne; defendant argues that Mr. Payne's testimony "not only went far beyond that of [Becca's] but in fact con-

tradicted her testimony[.]" Mr. Payne's allegedly erroneous testimony included stating that Todd "put his thing in her and that daddy was there when he did that, and that daddy put his thing in her mouth and made a mess all over her on numerous occasions." Even assuming *arguendo* that the trial court erred in allowing Mr. Payne to testify as he did, it was not prejudicial in light of Becca's testimony establishing numerous sexual offenses committed against her, Todd's testimony regarding what he witnessed, and Dr. Cerjan's testimony which stated that Becca's vaginal exam was abnormal in a manner which would only be caused by repeated "direct trauma going into the vaginal opening." In fact, Becca's and Todd's testimonies alone establish all of the elements of the crimes with which defendant was charged. Accordingly, we find no prejudice, and this argument is overruled.

B. Plain Error

**[4]** Defendant concedes that he did not object to some of the witnesses' testimonies and thus requests this Court review these issues for plain error.

> [T]he plain error rule is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where the error is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (citation, quotation marks, ellipses, and brackets omitted). "Plain error is error so fundamental that it tilted the scales and caused the jury to reach its verdict convicting the defendant." *State v. McNeil*, 196 N.C. App. 394, 400, 674 S.E.2d 813, 817 (2009) (citation and quotation marks omitted).

1. Todd

As to Todd's testimony, regarding what his father did to Becca and himself, defendant notes that it differs from Becca's in that she testified only that Todd "insert[ed] a toy car into her vaginal opening"

whereas Todd testified "he had oral sex with her, anal sex with her and vaginal sex with her[.]" Defendant's convictions involving acts which he forced Todd to commit were aiding and abetting a sex offense and child abuse by allowing a sex act. Thus, even assuming *arguendo* that Todd's testimony was erroneously admitted, defendant fails to show plain error because Becca's testimony alone establishes the elements of the crimes for defendant's relevant convictions. *See* N.C. Gen. Stat. §§ 14-27.4(a)(1), -318.4(a2). Accordingly, this argument is overruled.

2.   Dr. Robert Costrini

Defendant next argues that the trial court erroneously allowed Dr. Robert Costrini, Todd's therapist, to testify as he did because Todd

> said the only thing that occurred in the presence of his father was oral sex. Dr. Costrini testified that typically when the three were together it involved vaginal penetration with his penis and anal penetration. The testimony alleging that [defendant] would undress and remove his penis and masturbate while watching the two children was never testified to by

Todd or Becca. Again, even assuming *arguendo* that the trial court erred in allowing Dr. Costrini to testify in the manner described herein, defendant cannot show plain error in light of Becca's, Todd's, and Dr. Cerjan's testimonies. This argument is overruled.

3.   Investigator T.O. Curry

Defendant also contends that

> [a]lthough [Todd]'s testimony was clear, that his father was not present when anal or vaginal intercourse was occurring between he and [Becca], Detective Curry[, law enforcement investigator,] was allowed to dispute and contradict that testimony by saying that [Todd] told him that his father was present in the room when he placed his penis inside the vagina of [Becca].

Defendant also argues that "the trial court committed reversible plain error by allowing Detective Currie [sic] to give improper testimony of [Todd]'s credibility by stating "I felt like he told me the truth in what he told me[.]' " (Original in all caps.). Again, in light of Becca's, Todd's, and Dr. Cerjan's testimonies, any erroneous admission of this portion of Detective Curry's testimony is not plain error. This argument is overruled.

4.  Mr. Billy Payne

As to Mr. Payne's testimony defendant also argues that "the trial court committed reversible plain error by allowing Billy Payne to give improper testimony of [Becca]'s credibility by stating [Becca] has never said "it didn't happen or that someone else did those things to her." (Original in all caps.) Again, in light of the other evidence against defendant the admission of such a statement would not constitute plain error.

## IV.  Acting in Concert

[5] Defendant next contends that the trial court erroneously instructed the jury on acting in concert when "[t]he evidence at trial showed that [Todd] was a 12-year old boy who acted under the direct orders and threats from [defendant] and therefore was not acting together in harmony or in conjunction with another pursuant to a common plan or purpose." Similar to his aiding and abetting argument, defendant essentially argues here that because Todd was a victim of the crime, he could not be acting in concert with defendant to commit the crime. Defendant again concedes that because he failed to object at trial we may only review this issue for plain error. We have read the jury instructions as a whole, and in light of the fact that they correctly state the law as to aiding and abetting, defendant did not object to the aiding and abetting instruction, and the fact that the jury could have found defendant guilty of aiding and abetting as to the acts which he forced Todd to perform, rather than finding him guilty of acting in concert with Todd, we conclude that defendant has not met the high hurdle of plain error. This argument is overruled.

## V.  Satellite-Based Monitoring

[6] Lastly, defendant requests we review the trial court's orders requiring him to enroll in satellite-based monitoring ("SBM"). Defendant failed to file a written notice of appeal from his orders imposing SBM but did file a petition for certiorari asking us to review this issue. The State also requests that this Court allow defendant's petition for certiorari. In *State v. Mann*, this Court stated:

> Defendant petitions this Court for writ of certiorari because he failed to file written notice of appeal as required by *State v. Brooks*, ___ N.C. App. ___, ___, 693 S.E.2d 204, 206 (2010) (holding oral notice pursuant to N.C.R. App. P. 4(a)(1) insufficient to confer jurisdiction on this Court because SBM hearings involve a civil " 'regulatory scheme' " (quoting *State v. Bare*, 197 N.C. App.

461, 472, 677 S.E.2d 518, 527 (2009), *disc. review denied*, 364 N.C. 436, 702 S.E.2d 492 (2010))). The *Brooks* opinion was filed 18 May 2010 and defendant was sentenced two months later on 19 July 2010. Because *Brooks* was filed only two months before defendant's sentencing, we choose, in our discretion, to allow the petition for writ of certiorari.

___ N.C. App. ___, ___, ___ S.E.2d ___, ___ (COA 10-1186) (Aug. 2, 2011). Here, the trial court orders requiring defendant to enroll in SBM were entered on 16 August 2010. As 16 August 2010 is within three months of when *State v. Brooks* was filed, we grant defendant's petition for certiorari in our discretion. *See id.*

As to the orders for SBM, defendant specifically argues that "the trial court committed reversible error by sentencing the defendant to a lifetime satellite-based monitoring program for the rest of his natural life when the court made a finding defendant did not require the highest level of satellite monitoring." (Original in all caps.) Defendant requests a new hearing regarding SBM. We agree.

Indeed, defendant's SBM orders conclude that he "has not been classified as a sexually violent predator[,]" "is not a recidivist[,]" and that though his offenses "did involve the physical, mental, or sexual abuse of a minor" defendant "does not require the highest possible level of supervision and monitoring[.]" Despite these findings, the orders go on to require defendant to enroll in SBM for life. The State's brief also essentially concedes that defendant should receive a new hearing as to SBM as it "request[s] remand for clarification in light of the conflict between the findings and the order." In addition, it appears from the transcript that this was not a clerical error where the trial court mistakenly checked the wrong box on the form. The trial court stated that it

> was my assumption that he would not need monitoring in the Department of Corrections. Well, I think given his lack of previous record, the fact that he's going to be serving a long-term prison sentence, and that there's no indication that he has victimized any other person other than the two children, I am not going to find that he requires the highest level of satellite monitoring.

However, our statutes do not provide for different levels of SBM; the proper finding is that the defendant requires, or does not require, "the highest possible level of supervision and monitoring[,]" and "the highest level of supervision and monitoring" is, by definition, SBM.

*See State v. Kilby*, 198 N.C. App. 363, 367 n.2, 679 S.E.2d 430, 432 n.2 (2009). As this Court has noted, the statutory phrase

> 'highest possible level of supervision and monitoring' simply refers to SBM, as the statute provides only for SBM and does not provide for any lesser levels or forms of supervision or monitoring of a sex offender. If SBM is imposed, the only remaining variable to be determined by the court is the duration of the SBM.

*Id.*

It appears from the transcript that the trial court may have determined defendant would not require "the highest possible level of supervision and monitoring" in the form of SBM since defendant would be in prison for such a long time, but nonetheless the trial court ordered SBM because *if* the defendant is released from prison, SBM would be required. However, the determination as to whether SBM is required is to be based upon the relevant statutory language, rather than defendant's likely term of imprisonment. *See State v. Causby*, 200 N.C. App. 113, 115, 683 S.E.2d 262, 263-64 (2009) ("N.C. Gen. Stat. § 14-208.40A(d) provides that if the court finds that the offender committed an offense that involved the physical, mental, or sexual abuse of a minor, that the offense is not an aggravated offense or a violation of G.S. 14-27.2A or G.S. 14-27.4A and the offender is not a recidivist, the court shall order that the Department of Correction do a risk assessment of the offender. Upon receipt of that risk assessment, the court shall determine whether, based on the Department's risk assessment, the offender requires the highest possible level of supervision and monitoring." N.C. Gen. Stat. § 14-208.40A(e). If . . . the trial court determines that the offender does require the highest possible level of supervision and monitoring, then the trial court "shall order the offender to enroll in a satellite-based monitoring program for a period of time to be specified by the court." (citation, quotation marks, and brackets omitted)). We find nothing in Chapter 14, Article 27A of the North Carolina General Statutes which provides that the length of the sentences of a defendant required to be on SBM should be a factor in determining if defendant "requires" SBM, if and when he is released from prison. As the trial court's finding that defendant "does not require the highest possible level of supervision and monitoring" does not support the order's decree that defendant enroll in SBM for life and as it is unclear whether either the finding or the requirement of SBM was entered in error, we must reverse and remand defendant's orders requiring SBM for a new hearing.

## VI.  Conclusion

For the foregoing reasons, we find no error in defendant's trial but order that he receive a new hearing regarding his enrollment in SBM.

NO ERROR in part; REVERSED and REMANDED in part.

Judges GEER and THIGPEN concur.