IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 19-244

Filed: 4 August 2020

Onslow County, Nos. 17 CRS 55834, 17 CRS 55835

STATE OF NORTH CAROLINA

v.

JEREMY JOHN WOHLERS, Defendant.

Appeal by Defendant from judgments entered 7 September 2018 by Judge Richard Kent Harrell in Superior Court, Onslow County. Heard in the Court of Appeals 12 November 2019.

*Attorney General Joshua H. Stein, by Assistant Attorney General Deborah M. Greene, for the State.*

*Sean P. Vitrano for Defendant.*

McGEE, Chief Judge.

I. Factual and Procedural History

Defendant and A.W. were married in July 2008. As of August 2017, Defendant and A.W. were living together in Richlands, North Carolina, with their daughters L.W. (age 8), Jo.W. (age 5), and Ja.W. (age 4), as well as A.W.'s daughter from a previous partner, M.K. (age 10), with whom A.W. was pregnant when she and Defendant began dating.

On 13 February 2018, a grand jury indicted Defendant on two counts of indecent liberties with a child, two counts of felony child abuse by sexual act, and two counts of statutory sexual offense with a child by an adult. The bill of indictment in case number 17 CRS 55834 stated the charges with respect to L.W. The indictment in case number 17 CRS 55835 stated the charges with respect to M.K. The cases were tried in Superior Court, Onslow County, on 4 September 2018.

At trial, A.W. testified that, around the beginning of August 2017, Defendant told A.W. that her best friend had reported that L.W. had searched for and watched pornography on her Kindle tablet. She testified they discussed the need to monitor the girls' use of electronic devices more closely. A.W. testified that later that week, Defendant told her he had been having an affair with her best friend and that he was leaving A.W. to be with her.

A.W. spoke with all four of her children on 21 August 2017 to explain that watching pornography was inappropriate. She testified she asked L.W. where she learned to watch pornography and L.W. replied that "Daddy showed us how to watch it, and every time you go to work or you go to school, Daddy makes the older three girls watch it." A.W. said to the girls that "if this happened, then they needed to tell somebody they trust[.]" A.W. also told them to tell an adult if someone touches them. At that point, M.K. said, "Well, Daddy touched me." M.K. told A.W. that, after the last cheerleading competition they participated in, "Daddy gave [Ja.W]. his phone

and put her in another room, and that's when Daddy touched me." A.W. testified that there was a cheerleading competition in June 2017 in Greensboro, North Carolina, at which she had Jo.W. and L.W. in her car and Defendant had M.K. and Ja.W. in his car and, after staying the night and attending the cheerleading competition on the second day, Defendant left several hours early with M.K. and Ja.W. to return to their home to care for their dog.

After M.K. told A.W. that Defendant had touched her, A.W. contacted the Onslow County Sheriff's Department and asked to have an officer come to their house so she could make a report. A deputy came to the house, along with Sue Barnett ("Ms. Barnett"), a social worker with Onslow County Department of Social Services. Denita Sims ("Ms. Sims"), another social worker investigating the case, testified that Ms. Barnett tried to interview the children outside of Defendant's presence, but they did not speak when spoken to and acted bashful and slightly annoyed by the questions. Ms. Sims testified that Defendant visited DSS the next day. According to Ms. Sims, Defendant indicated he had previously caught M.K. and L.W. looking at inappropriate pictures online and also that M.K. was a "problem child." Ms. Sims testified Defendant did not at that time deny any of the allegations that had been made.

Sara Ellis ("Ms. Ellis"), a forensic interviewer with the Child Advocacy Center of Onslow County, interviewed M.K. and L.W. at the Child Advocacy Center on 30

August 2017. Ms. Ellis testified that "[a] child forensic interview is a neutral, fact-finding conversation with a child" and she is "specially trained to have these conversations with children." In the interview with M.K., which was video-recorded and played at trial, M.K. said that Defendant had broken the no-touch rule more than once when they lived in both houses they had lived in in Richlands and their previous home in Jacksonville. In the interview, M.K. said during the most recent time after the cheerleading competition, Defendant broke the no-touch rule for "both" parts.

The State showed M.K. an anatomical diagram on which she had circled where Defendant had touched her. She identified the place Defendant touched her as the "private part" which she used to "[p]ee[.]" The prosecutor showed her another anatomical diagram of genitalia, including labels for the labia majora, labia minora, clitoris, urethra, vagina, and anus. She was then given a marker and asked to "color in" the area where Defendant touched her. The exhibit, which was published to the jury and included in the record on appeal, indicates she colored in the area of the vagina and the labia minora. M.K. testified Defendant touched her there with his hand more than one time.

Ms. Ellis testified she interviewed L.W. on 1 September 2017, and a video recording of the interview was also played at trial. In the interview, L.W. said she thought Defendant had touched M.K. once, but that M.K. had not told her he had. She said Defendant had not broken the no-touch rule with her.

Dr. Suzanne Stelmach ("Dr. Stelmach"), a volunteer physician at the Child Advocacy Center, conducted physical examinations of M.K. and L.W. after viewing the interviews with Ms. Ellis. She testified that, based on the alleged conduct being penetration by Defendant with his fingers, her "anticipated results of the exam would have been a normal exam[,]" because "[t]hey did not describe anything that would have resulted in any evidence of trauma." She testified the examinations of both girls were in fact normal. Dr. Stelmach also testified regarding female anatomy using a three-dimensional model. She testified the clitoris is located interior to the labia majora and that she would consider touching of the clitoris to be penetration of the genital opening.

Keith Johnston ("Detective Johnston"), a detective with the Special Victims Unit of the Onslow County Sheriff's Office, interviewed Defendant on 13 September 2017 and a video of the recorded interview was played at trial. Defendant made a written statement that he touched L.W. "in privet [(sic)] area on out side area" at the house where he and the family used to live, when L.W. was 7. In the interview, he said L.W. was already in the bedroom using the computer when he came in and touched her on the outside near her clitoris. He said she said "no or something" and he realized what he was doing was wrong and he stopped after touching her for less than a minute.

Defendant also made a written statement saying he "touch[ed] M.K. in privet [(sic)] area on out side area" at the current house, when M.K. was 9. In the interview, Defendant said he called her into his bedroom, asked M.K. to take off her pants and he touched her in her private area, at the top where her clitoris would be. He said he touched her there for a few minutes. He said M.K. turned her head and only at that point did he realize what he was doing was wrong and stopped. Defendant denied exposing himself to M.K. or having an erection.

At the close of the State's case, the trial court dismissed the statutory sexual offense charge arising from the conduct against L.W. for insufficient evidence. After hearing all the evidence, the jury found Defendant not guilty of the statutory sexual offense charge in 17 CRS 55835, regarding M.K., and returned guilty verdicts as to the remaining charges of indecent liberties with a child and felony child abuse by sexual act as to both L.W. and M.K.

The trial court imposed two consecutive sentences of 64 to 137 months each and ordered Defendant to undergo risk assessment for a satellite-based monitoring determination and, upon the completion of his term in prison, to register as a sex offender for 30 years. Defendant appeals.

## II. Analysis

Defendant argues three issues on appeal: (1) the trial court plainly erred in instructing the jury regarding charges of felonious child abuse by sexual act; (2) the

trial court plainly erred in "permitting [Ms. Ellis] to testify that M.K. had deliberately withheld information about sexual abuse during the interview and that she was a child whose disclosure was intended to stop the abuse"; and (3) that the trial court erred in calculating the maximum term of imprisonment during sentencing.

A. *Jury instruction for charges of felonious child abuse by sexual act*

Defendant first argues that the trial court plainly erred in instructing the jury regarding the charges of felonious child abuse by sexual act. Defendant did not object to the instruction at trial and, therefore, it is not preserved; however, Defendant asks this court to review the jury instruction for plain error. This Court reviews unpreserved claims of error in jury instructions for plain error. *State v. Lawrence*, 365 N.C. 506, 518, 723 S.E.2d 326, 334 (2012). A party arguing plain error on appeal must show "a fundamental error occurred at trial." *Id.* (citation omitted). "To show that an error was fundamental, a defendant must establish prejudice—that, after examination of the entire record, the error 'had a probable impact on the jury's finding that the defendant was guilty.'" *Id.* (citations omitted). "[B]ecause plain error is to be 'applied cautiously and only in the exceptional case,' the error will often be one that 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings[.]'" *Id.* (internal citations omitted).

Defendant was charged with two counts of felonious child abuse by sexual act. N.C. Gen. Stat.§ 14-318.4(a2) provides that "[a]ny parent or legal guardian of a child

less than 16 years of age who commits or allows the commission of any sexual act upon the child is guilty of a Class D felony." N.C. Gen. Stat. § 14-318.4(a2) (2017). This statute under which Defendant was charged does not specifically define "sexual act"; however, the trial court gave a jury instruction based on North Carolina Pattern Jury Instruction — Criminal 239-55B (hereafter N.C.P.I.—Crim. 239-55B), stating in pertinent part that "[a] sexual act is an immoral, improper or indecent touching or act by the defendant upon the child." Defendant argues giving this jury instruction was legal error, because the definition of "sexual act" that was given was "overbroad."

Defendant relies on *State v. Lark*, 198 N.C. App. 82, 678 S.E.2d 693 (2009), *disc. rev. denied*, 363 N.C. 808, 692 S.E.2d 111 (2010), and *State v. Stokes*, 216 N.C. App. 529, 718 S.E.2d 174 (2009), to argue that a more restrictive definition of "sexual act" should apply to the offense of felonious child abuse by sexual act. Specifically, Defendant argues that the following definition of "sexual act" in N.C. Gen. Stat. § 14-27.20(4) should apply to the offense in N.C.G.S. § 14-318.4(a2):

> Sexual act [means] [c]unnilingus, fellatio, analingus, or anal intercourse, but does not include vaginal intercourse. Sexual act also means the penetration, however slight, by any object into the genital or anal opening of another person's body. It is an affirmative defense that the penetration was for accepted medical purposes.

N.C. Gen. Stat. § 14-27.20(4) (2017).[1] Defendant argues this Court "applied the definition of 'sexual act' in . . . [N.C.G.S.] § 14-27.20(4)[] to [N.C.G.S.] § 14-318.4(a2)" in *Lark* and *Stokes*. The State, in turn, argues that although this Court cited the Article 7B definition of "sexual act" in these cases, in both instances that was *obiter dicta* because the question of the appropriate jury instruction for the "sexual act" element of felony child abuse by sexual act was not before the Court.

We need not determine whether this Court's citation to the Article 7B definition of "sexual act" in *Lark* and *Stokes* was *dicta*, however. Since the case before us was heard by this Court, the Supreme Court of North Carolina has directly resolved the question of whether, as Defendant argues here, giving the jury instruction in N.C.P.I.—Crim. 239.55B is error because the Article 7B definition of "sexual act" applies to and limits the use of that term in the offense of felony child abuse by sexual act in N.C.G.S. § 14-318.4(a2).

A panel of this Court held in *State v. Alonzo*, 261 N.C. App. 51, 54–55, 819 S.E.2d 584, 587 (2018), that *Lark*'s application of the definition of "sexual act" in N.C.G.S. § 14-27.20(4) (referenced therein in its prior codification as N.C.G.S. § 14-

---

[1] N.C.G.S. § 14-27.20(4) was recodified from N.C.G.S. § 14-27.1(4) in 2015. The article of which the statute was a subsection was also recodified in 2015 from Article 7A to Article 7B. *See* An Act to Reorganize, Rename, and Renumber Various Sexual Offenses to Make Them More Easily Distinguishable From One Another as Recommended by the North Carolina Court of Appeals in "State of North Carolina v. Slade Weston Hicks, Jr.," and to Make Other Technical Changes, S.L. 2015-181, §§1, 2, 2015 N.C. Sess. Laws 460, 460. For consistency, all references herein will refer to the recodified language at N.C.G.S. § 14-27.20(4) and Article 7B.

27.1(4)) to the offense of felony child abuse by sexual act under N.C.G.S. § 14-318.3(a2) was part of that decision's holding and thus binding on this Court. This Court thus held that the trial court erred in using the jury instruction in N.C.P.I.—Crim. 239.55B because "[w]hile the Pattern Jury Instruction allows a broader categorization of what qualifies as a 'sexual act,' our precedent defines the words more narrowly." *Id.* at 55, 819 S.E.2d at 587 (citation omitted). This Court in *Alonzo* called for N.C.P.I.—Crim. 239.55B to be updated to "conform with this Court's definition in *Lark*." *Id.* This Court held the defendant in *Alonzo* was not prejudiced by the trial court's error. *Id.* at 56, 819 S.E.2d at 588.

Our Supreme Court allowed discretionary review of *Alonzo* and modified and affirmed this Court's decision. *State v. Alonzo*, 373 N.C. 437, 437, 838 S.E.2d 354, 355 (2020). The Supreme Court conducted a statutory analysis of the relevant provisions, noting that N.C.G.S. § 14-27.20 expressly limited the applicability of its definitions—including the definition of "sexual act"—to Article 7B. *Alonzo*, 373 N.C. at 441, 838 S.E.2d at 357. It further noted that "sexual act" as defined in N.C.G.S. § 14-27.20(4) has been interpreted "as arising from the specific elements of the crimes listed in Article 7[B,]" providing a further reason to conclude the definition was intended to apply only to first and second degree sexual offense within that article. *Id.* at 442, 838 S.E.2d at 358 (alteration reflecting recodification). Our Supreme Court concluded:

> [T]he legislative history demonstrates that from the time N.C.G.S. § 14-27.1 was enacted in 1980, until it took its current form in N.C.G.S. § 14-27.20, the legislature intended for the definitions in the statute to apply only within the respective article. Accordingly, it was error for the Court of Appeals to conclude that the definition of "sexual act" contained in N.C.G.S. § 14-27.[20](4) was applicable to offenses under N.C.G.S. § 14-318.4(a2), which is contained in a separate article, Article 39.

*Id.* Our Supreme Court has, therefore, rejected precisely the argument Defendant advances here. Based on *Alonzo*, we hold the trial court did not err, nor plainly err, in providing a jury instruction based on N.C.P.I.—Crim. 239.55B and not providing an instruction based on the definition of "sexual act" under N.C.G.S. § 14-27.20(4).

### B. Ms. Ellis's testimony about M.K.

Defendant next argues that the trial court erred by permitting Ms. Ellis to testify that she believed M.K. did not make a full disclosure and that "[her interview] w[as] a tentative disclosure," because under this Court's decision in *State v. Giddens*, 199 N.C. App. 151, 681 S.E.2d 504 (2009), Ms. Ellis was a witness impermissibly "vouch[ing] for the credibility of a victim." *State v. Giddens*, 199 N.C. App. 115, 121, 681 S.E.2d 504, 508 (2009), *aff'd per curiam*, 363 N.C. 826, 689 S.E.2d 858 (2010). As Defendant did not timely object at trial, Defendant has requested we review this unpreserved issue for plain error. N.C. R. App. P. 10(a)(4) (2017); *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.

In *Giddens*, the defendant was charged with multiple sexual offenses committed on his minor daughter and stepson. *Giddens*, 199 N.C. App. 115, 121, 681 S.E.2d at 505. A child protective services investigator assigned to the case interviewed the children and arranged a medical examination. *Id.* at 118, 681 S.E.2d at 506. At trial, the investigator testified that the defendant's actions were "substantiated," meaning that the examiners "found evidence throughout the course of their investigation to believe that the alleged abuse and neglect did occur." *Id.* (internal quotation marks and brackets omitted). The jury found the defendant guilty of all the charges. *Id.* at 119, 681 S.E.2d at 507. On appeal, this Court ordered a new trial, holding that the trial court plainly erred by permitting the investigator to testify that her investigation substantiated the children's abuse allegations. *Id.* at 123, 681 S.E.2d at 509. We reasoned that the investigator's testimony, which was based on more evidence than just the statements of the children, went beyond permissible corroboration by prior consistent statements and, furthermore, that "[o]ur case law has long held that a witness may not vouch for the credibility of a victim." *Id.* at 120–22, 681 S.E.2d at 507–08. This Court further held the trial court's error prejudiced the defendant because, "without [the investigator]'s testimony, the jury would have been left with only the children's testimony and the evidence corroborating their testimony[; t]hus . . . 'the central issue to be decided by the jury was the credibility of the victim[s].'" *Id.* at 123, 681 S.E.2d at 509.

In the present case, Ms. Ellis testified about forensic interview procedures in general and explained that children disclose abuse in various ways. Videos of the interviews she conducted were admitted into evidence and played to the jury, after which the prosecutor asked Ms. Ellis "[h]ow would you describe [M.K.]'s personality, now that we've all had a chance to sort of witness the interview?" She responded that M.K. was "a very quiet child," and that "a lot of the questions were answered with, 'I don't know,' and 'I don't remember' . . ." The transcript then shows the following exchange between the prosecutor and Ms. Ellis:

> Q: Did she seem at all on a mission to tell you much of anything?
> A: Nothing.
> Q: Much less make a full detailed disclosure like you've described some interviews do.
> A: Yes.
> Q: Would you describe [M.K.]'s disclosure—of the four you mentioned earlier, how would you describe her disclosure? What categories did that fit into?
> . . . .
> A: She would be a tentative disclosure. She—just based on my interaction with her and her lack of wanting to talk, she's a child who falls into the I want to tell someone so this will stop, but I don't really want it to go past that, and I just want it to be done.

Defense counsel did not object or move to strike the answer. The trial court excused the jury and asked the prosecutor whether the line of questioning would continue, in response to which the prosecutor offered to stop. The trial court said the following:

> Okay. I—the witness's answers to the question are going beyond, I believe, what the Supreme Court laid out in

> [*State v.*] *Towe* as that line that the doctor had crossed in that case as well. So without there being any physical findings and—I didn't—I think the questions earlier about the characteristics were proper, but when she starts trying to put this child into a specific category about disclosure— the jury has seen the interview. They've heard the child's statement, and they've seen her testify. It's for the jury to determine that credibility issue.

The court told the prosecutor not to ask further questions; however, when the jury returned, the court did not instruct the jury to disregard the previous testimony. Moreover, Defendant did not move to strike the testimony at that time.

Defendant now argues, relying on *Giddens*, that Ms. Ellis's testimony was impermissible vouching of M.K.'s credibility. We need not decide whether the trial court erred in failing to strike the testimony however, because even assuming, *arguendo*, that failing to strike the testimony was error, Defendant cannot show he was prejudiced by the error. Defendant here cannot show any error was fundamental—that it "'had a probable impact on the jury's finding that the defendant was guilty.'" *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334 (citation omitted). In particular, besides the interviews and the trial testimony of M.K., the record also shows Defendant's own written statement that he touched M.K.'s private area near her clitoris for a few minutes, which is itself consistent with M.K.'s testimony. Although Defendant specifically denied there was any digital penetration of M.K.'s genitalia in his statement, as we noted above, the restrictive definition of "sexual act" in N.C.G.S. § 14-27.20(4), on which Defendant relies for his argument that

penetration is required to establish felony child abuse by sexual act under N.C.G.S. § 14-318.4(a2) does not apply to that offense. Regardless of Ms. Ellis's testimony, Defendant's written statement and M.K.'s testimony independently support the jury's conclusion that Defendant committed the offense at issue. As Defendant cannot show Ms. Ellis's testimony had a probable impact on the jury's finding of guilt, he cannot show any error was fundamental and, therefore, we hold there was no plain error.

### C. Calculation of maximum term of imprisonment

Finally, Defendant argues the trial court committed clerical error in the calculation of the maximum term of imprisonment. Defendant was found guilty of two counts of taking indecent liberties with a child, each a Class F felony, and two counts of felony child abuse by sexual act, each a Class D felony. The trial court consolidated the Class D and F felonies in each case. As Defendant did not have any prior criminal history points, the trial court determined he was prior record level I. The trial court found the offenses were reportable convictions under N.C. Gen. Stat. § 14-208.6 and imposed a term of 64 to 137 months in each case.

Defendant argues the trial court erred in calculating the maximum sentence because N.C. Gen. Stat. § 15A-1340.17(f) provides that, for offenders sentenced for reportable convictions that are Class B1 through E felonies, the maximum term of imprisonment "shall be equal to the sum of the minimum term of imprisonment and

twenty percent (20%) of the minimum term of imprisonment, rounded to the next highest month, plus 60 additional months." N.C. Gen. Stat. § 15A-1340.17(f) (2017). Defendant argues that, because N.C.G.S. § 15A-1340.17(c) provides the mandatory minimum term of imprisonment for a Class D felony, prior record level I, is 51 months, the trial court should have used that term in computing the maximum term of imprisonment for his sentence, rather than the 64 months it used based on the minimum term actually imposed. Specifically, because 10.2 months is twenty percent of 51 months, which is in turn rounded up to 11, Defendant argues the trial court should have added 51 months plus 11 months plus 60 months to yield a maximum of 122 months.

Defendant relies on *State v. Parker*, 143 N.C. App. 680, 550 S.E.2d 174 (2001), to support the proposition that the Structured Sentencing Act permits discretion in setting a minimum, but "no discretion in the determination of maximum sentences." But the State correctly notes that the portion of *Parker* relied upon by Defendant in fact supports the contrary argument. In *Parker*, this Court held as follows:

> The Structured Sentencing Act clearly provides for judicial discretion in allowing the trial court to choose a minimum sentence within a specified range. However, the language of the Act provides for no such discretion in regard to maximum sentences. The legislature did not provide a range of possible maximum sentences nor did it create a vehicle to alter the maximum sentences based on the circumstances of the case as with minimum sentences. *Rather, the Act dictates that once a minimum sentence is*

> *determined, the "corresponding" maximum sentence is "specified" in a table set forth in the statute.*

*State v. Parker*, 143 N.C. App. 680, 685–86, 550 S.E.2d 174, 177 (2001) (citations omitted) (emphasis added). The "minimum term of imprisonment" used to determine the maximum term under N.C.G.S. § 15A-1340.17(f) is thus not the absolute minimum mandatory duration within the range identified in the chart set forth under N.C.G.S. § 15A-1340.17(c), but the minimum term of imprisonment actually imposed in the sentence.

The presumptive range of minimum durations for a Class D felony for an offender at prior record level I is 51 to 64 months. N.C. Gen. Stat. § 15A-1340.17© (2017). The trial court exercised its discretion to sentence Defendant at the top end of that presumptive range, to a minimum term of imprisonment of 64 months. Once that minimum was set, the trial court properly applied N.C.G.S. § 15A-1340.17(f), which provides that "the maximum term of imprisonment shall be equal to the sum of the minimum term of imprisonment and twenty percent (20%) of the minimum term of imprisonment, rounded to the next highest month, plus 60 additional months." N.C.G.S. § 15A-1340(f). As the minimum term of Defendant's imprisonment was set at 64 months, the trial court added 64 plus 13 (being twenty percent of 64, 12.8, rounded to the next highest month) plus 60, totaling 137 months. The trial court thus did not commit clerical error in sentencing Defendant to a maximum term of imprisonment of 137 months.

III. <u>Conclusion</u>

Defendant argued three issues on appeal. We hold the trial court did not plainly err in instructing the jury based on N.C.P.I.—Crim. 239-55B, instead of the definition of sexual act in N.C.G.S. § 14-27.20(4). We also hold the trial court did not plainly err in not striking Ms. Ellis's testimony characterizing M.K.'s interview, because even if it was error, Defendant cannot show the error was prejudicial. Finally, we hold the trial court did not commit clerical error in sentencing Defendant.

NO ERROR.

Judges BRYANT and BERGER concur.